# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| LYNLEE MICHELE ROWDEN, | ) |
|---|---|
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Case No. CIV-19-361-SM |
| ANDREW M. SAUL, | ) |
| COMMISSIONER OF SOCIAL | ) |
| SECURITY ADMINISTRATION, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Lynlee Michele Rowden (Plaintiff) brings this action for judicial review of the Commissioner of Social Security's final decision that she was not "disabled" under the Social Security Act. *See* 42 U.S.C. §§ 405(g), 423(d)(1)(A). The parties have consented to the undersigned for proceedings consistent with 28 U.S.C. § 636(b)(1)(B) and (C). *See* Docs. 11, 16.

Plaintiff asks this Court to reverse the Commissioner's decision and to remand the case for further proceedings on grounds that the ALJ failed to correctly consider the findings by a post-hearing examining psychologist and likewise failed to properly evaluate the opinions of Plaintiff's counselor and case manager. Plaintiff also contends that as a result of the Commissioner's ultra vires retroactive rulemaking, the ALJ applied the incorrect legal standard in evaluating Plaintiff's mental impairments. *See* Docs. 15 & 27.

After a careful review of the record (AR), the parties' briefs, and the relevant authority, the Court affirms the Commissioner's decision. *See* 42 U.S.C. § 405(g). [1]

## I. Administrative determination.

### A. Disability standard.

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "This twelve-month duration requirement applies to the claimant's inability to engage in any substantial gainful activity, and not just [the claimant's] underlying impairment." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Barnhart v. Walton*, 535 U.S. 212, 218-19 (2002)).

### B. Burden of proof.

Plaintiff "bears the burden of establishing a disability" and of "ma[king] a prima facie showing that [s]he can no longer engage in h[er] prior work

---

[1] Citations to the parties' pleadings and attached exhibits will refer to this Court's CM/ECF pagination. Citations to the AR will refer to its original pagination.

activity." *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985). If Plaintiff makes that prima facie showing, the burden of proof then shifts to the Commissioner to show Plaintiff retains the capacity to perform a different type of work and that such a specific type of job exists in the national economy.

**C.   Relevant findings.**

**1.   Administrative Law Judge's findings.**

The ALJ assigned to Plaintiff's case applied the standard regulatory analysis to decide whether Plaintiff was disabled during the relevant timeframe. AR 26-32; *see* 20 C.F.R. § 416.920(a)(4); *see also Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (describing the five-step process). The ALJ found Plaintiff:

(1)   had not engaged in substantial gainful activity since May 20, 2015, the date she filed her application for supplemental security income;

(2)   had severe medically determinable impairments, specifically, an affective disorder and an anxiety disorder;

(3)   had no impairment or combination of impairments that met or medically equaled the severity of a listed impairment;

(4)   had the physical residual functional capacity[2] (RFC) to perform work at all exertional levels but was limited to carrying out simple unskilled work involving no interaction with the general public and no more than occasional,

---

[2]   Residual functional capacity "is the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. § 416.945(a)(1).

> incidental interaction with coworkers and supervisors (brief, succinct, and task-oriented), and she was best working more with things and data instead of people;
>
> (5) had no past relevant work, but could perform jobs existing in significant numbers in the national economy such as industrial sweeper/vacuum cleaner (after hours); floor waxer; and janitor; and thus
>
> (6) had not been under a disability since May 20, 2015, the date she applied for supplemental security income benefits.

*See* AR 26-32.

### 2. Appeals Council's findings.

The Social Security Administration's Appeals Council denied Plaintiff's request for review, *see id.* at 1-4, making the ALJ's decision "the Commissioner's final decision for [judicial] review." *Krauser v. Astrue*, 638 F.3d 1324, 1327 (10th Cir. 2011).

## II. Judicial review of the Commissioner's final decision.

### A. Review standard.

The Court reviews the Commissioner's final decision to determine "whether substantial evidence supports the factual findings and whether the ALJ applied the correct legal standards." *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016). Substantial evidence is "more than a scintilla, but less than a preponderance." *Lax*, 489 F.3d at 1084; *see also Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) ("It means—and means only—such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion.") (internal quotation marks and citation omitted). A decision is not based on substantial evidence "if it is overwhelmed by other evidence in the record." *Wall*, 561 F.3d at 1052 (citation omitted). The Court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Newbold v. Colvin*, 718 F.3d 1257, 1262 (10th Cir. 2013) (citation omitted).

   B.   **Issues for judicial review.**

The crux of Plaintiff's claims is the assertion that the ALJ failed to properly consider Plaintiff's mental impairments, including whether Plaintiff was intellectually disabled. Plaintiff alleges that the ALJ (1) improperly considered medical evidence from the examining physician and from Plaintiff's treating therapist, (2) failed to meet her heightened obligation to develop the record, and (3) failed to comply with procedures set forth in Social Security Ruling 96-6p. Doc. 15, at 20-24. Plaintiff further alleges that the ALJ applied the incorrect legal standard to her evaluation of Plaintiff's mental impairments. *Id.* at 25-34.

### C. Analysis.

#### 1. Whether the ALJ erred in assessing medical opinion evidence.

At the conclusion of the administrative hearing, the ALJ prompted Plaintiff's hearing counsel to renew his efforts to obtain records from the Family Recovery Counseling Center where Plaintiff received weekly counseling services from Michelle Hickox, a licensed alcohol and drug counselor. *See* AR 83-84. The ALJ explained she wanted "to see the totality of the records" *id.* at 85, before acting on Plaintiff's hearing counsel's pending request, *see id.* at 79, for post-hearing "IQ testing." *Id.* at 79. Plaintiff's hearing counsel reported several weeks later that Ms. Hickox had responded to his renewed request by submitting a narrative report, *see id.* at 445-46, "as apparently there are no actual records generated in connection with the counseling." *Id.* at 260.

The ALJ subsequently granted Plaintiff's hearing counsel's request and referred Plaintiff to Robert Danaher, Psy.D., for post-hearing psychological evaluation, with IQ testing, and mental status examination. *See id.* at 447. Dr. Danaher's report, *see id.* at 448-57, was then made part of the record. *See id.* at 262-63 & 265-66.

### a. The ALJ's assessment of the opinions of the examining psychologist, Dr. Danaher.

In Plaintiff's view, "[t]he primary issue presented in this case [i]s whether the ALJ gave specific and legitimate reasons to justify rejection of the opinions of Dr. Danaher regarding [Plaintiff's] IQ testing results and her limitations in functioning." Doc. 27, at 1.

"An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2008) (citing 20 C.F.R. § 416.927(c)). For example, "[t]he ALJ is required to give controlling weight to the opinion of a treating physician" if certain conditions are met. *Id.* In contrast, "[t]he opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all." *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004) (citing § 416.927(c)(1)-(2)).

"[I]n determining what weight to give any medical opinion," the ALJ "must also consider a series of [six] specific factors." *Hamlin*, 365 F.3d at 1215

(citation omitted).³ The ALJ, however, need not "explicitly discuss" or "apply expressly each of the six relevant factors in deciding what weight to give a medical opinion." *Oldham*, 509 F.3d at 1258. Rather, "[i]n addition to discussing the evidence supporting h[er] decision, the ALJ also must discuss the uncontroverted evidence [s]he chooses not to rely upon, as well as significantly probative evidence [s]he rejects." *Frantz v. Astrue*, 509 F.3d 1299, 1302 (10th Cir. 2007) (quoting *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996)). And in discussing the weight given to a medical opinion, if "[t]he ALJ provided good reasons"—e.g., by making clear both "the weight" given and "the reasons for that weight"—then "[n]othing more was required." *Oldham*, 509 F.3d at 1258 (quoting *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003)); *see also Vigil v. Colvin*, 805 F.3d 1199, 1202 (10th Cir. 2015) ("When assessing a medical opinion, the ALJ must consider the factors listed in 20

---

³ These factors are: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); 20 C.F.R. § 416.927(c).

C.F.R. § [416.927(c)] and give good reasons for the weight he assigns the opinion.").

The ALJ specifically addressed the findings by the consultative examining psychologist, Dr. Danaher:

> Upon consultative mental status examination conducted on May 3, 2017, [Plaintiff] was alert and oriented; her speech was logical, goal directed and fully affective; her expressions were congruent with the content of her conversation and responsive; and she did not evidence functional communication deficits. On the Montreal Cognitive Assessment [Plaintiff] achieved a score of 9/30. The WAIS-III yielded a verbal scale IQ of 52, a performance scale IQ of 70 and a full scale IQ of 63; however, [Dr. Danaher] stated *"there are a couple of factors which argue against the diagnosis of intellectual disability,"* including the fact [Plaintiff] has a valid driver's license and *"some indicators suggestive of a level of effort which was potentially suboptimal.* This includes the fact that [Plaintiff] was apparently unable to identify any of three animals on the Montreal Cognitive Assessment. It is unusual for an individual able to pass a driver's test examination to be altogether unable to identify well-known animals such as depicted on this instrument." In concluding, [Dr. Danaher] opined [Plaintiff's] ability to understand, remember and carry out simple and complex instructions in a work related environment was questionable to poor. [Plaintiff] was assessed to have marked limitations on the ability to make judgments on complex work-related decisions, interact appropriately with the public, and respond appropriately to usual work situations and to changes in a routine work setting; and moderate limitations on interact appropriately with coworkers and supervisors (Exhibit 8F). The undersigned gives this opinion little weight.

AR 30 (emphases added).

The ALJ considered Dr. Danaher's report and made clear both the weight given and the reasons for that weight. She stated that she was discounting it due to "indicators suggestive of a level of effort which was potentially suboptimal," which, in turn, led to Dr. Danaher's equivocation in the diagnosis of intellectual disability. The ALJ gave specific and legitimate reasons for discounting Dr. Danaher's opinion (including the IQ testing results and functional limitations contained therein) and nothing more was required. *See* AR 30; *Oldham*, 509 F.3d at 1258; *see also Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012) (an examining opinion may be dismissed or discounted when the ALJ bases the determination on an evaluation of the factors in 20 C.F.R. § 416.927(c)(2)-(6) and provides specific, legitimate reasons for such determination); 20 C.F.R. § 416.927(c)(6) (ALJ is to consider "any factors . . . which tend to support or contradict the medical opinion").

  **b.**  **The ALJ's assessment of the opinions of Plaintiff's licensed alcohol and drug counselor, Michelle Hickox.**

Plaintiff submits that "[a]dditionally, the ALJ rejected the opinions and observations of the treating counselor Ms. Hickox as not supported by other information and as showing [Plaintiff] had recently improved." Doc. 15, at 21. According to Plaintiff, Ms. Hickox' letter "describ[ed Plaintiff's] functional

limitations in more detail than what was shown in the medical management notes by the psychiatrists." *Id.* at 20-21.

> On consideration of Ms. Hickox' letter, the ALJ determined:
>
> On September 1, 2016, [Plaintiff's] counselor noted [Plaintiff's] diagnoses included a bipolar disorder, depression, anxiety, and post-traumatic stress disorder. She noted [Plaintiff's] signs and symptoms included mood instability, forgetfulness, uncontrollable crying, difficulty getting out of bed, constantly feeling overwhelmed, panic attacks when she goes in public (Exhibit 6F). The undersigned gives no weight as to the diagnosis or limitations. [Plaintiff's] counselor does not provide information and shows the claimant getting better recently. The undersigned notes that this provider does not raise any concern about possible intellectual deficits.

*Id.* at 30; *see* 20 C.F.R. § 416.927(c)(3) (when determining weight to give medical opinion, ALJ will consider supportability), (6) (when determining weight to give medical opinion, ALJ will consider other factors that support or contradict the opinion).

In claiming error, Plaintiff does not challenge the ALJ's stated rationale in giving no weight to Ms. Hickox' letter. Instead, Plaintiff claims only that "the ALJ ignored the fact that, given that [Plaintiff] was represented by a non-attorney, the ALJ had a heightened duty to assure that the record was fairly and fully developed and failed to make any effort to obtain the treatment records supporting Ms. Hickox' report describing her longstanding treatment." Doc. 15, at 21-22. In her reply brief, however, Plaintiff admits "she was . . .

11

represented by an attorney" in her administrative proceedings rather than by "a non-attorney." Doc. 27, at 5.

Plaintiff fails to establish reversible error.[4]

### c. The ALJ's application of Social Security Rulings 96-6p and 06-3p.

Plaintiff also argues that Dr. Danaher's "psychological testing and evaluation was not available to the reviewing agency physicians who performed an initial evaluation of [Plaintiff's] mental impairments." Doc. 15, at 22-23. As a result, she faults the ALJ for failing to "obtain[ ] medical expert opinion to consider the updated medical records [or to] refer the case back to the reviewing agency physicians in accordance with Social Security Ruling 96-6p, which was in effect at the time for [Plaintiff's] claim . . . ." *Id.* at 23. Similarly, Plaintiff makes a passing reference to SSR 06-3p and to the ALJ's failure to "obtain medical evidence to address the issues she had with the

---

[4] The Court further notes that it is unclear what treatment records Plaintiff expected the ALJ to obtain, given Plaintiff's counsel's report that Ms. Hickox' narrative was her reply to counsel's request for "any records available," because "apparently there are no actual records generated in connection with the counseling," and affirming that, with the submission of the narrative report, Plaintiff "considers the case fully submitted and ready for decision." AR 260.

opinions of [Plaintiff's] treating therapist and case manager regarding her functional limitations." *Id.* at 24.

In response, the Commissioner advised that SSR 96-6p "was rescinded and replaced by SSR 17-2p effective March 27, 2017, and thus [was]not in effect at the time of the ALJ's decision" and that SSR 06-3p "was rescinded effective March 27, 2017, and thus [was] not in effect at the time of the ALJ's decision." Doc. 24, at 31 n.15; *see also* AR 32 (ALJ's decision dated August 29, 2017).

Although Plaintiff filed a reply brief, she did not dispute the Commissioner's analysis on these fronts. *See* Doc. 27. The Court agrees with the Commissioner that as of March 27, 2017, SSR 96-6p and SSR 06-3p were no longer effective and inapplicable to the ALJ's analysis. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01 (Jan. 18, 2017), at 5844, 5845-55 (rescinding SSR 96-6p; stating that 20 C.F.R. §§ 404.1527 and 416.927 would govern claims filed before March 27, 2017; and noting that certain policies from rescinded SSR 06-3p were added to the language of those regulations, making clear that the rescinded SSRs no longer governed claims filed before March 27, 2017).

### 2. The ALJ's application of Listing criteria for intellectual disorders.

Plaintiff further contends the ALJ erred in not applying previous Listing 12.05C, which changed as of January 2017. Doc. 15, at 25-34. She argues the Commissioner lacked the authority to make that amendment retroactive. *Id.* at 28. The SSA amended the regulations at issue—including Listing 12.05—specifying the amendment would become effective on January 17, 2017. 81 Fed. Reg. 66138-66167 (Sept. 26, 2016). These rules included eliminating Listing 12.05C, upon which Plaintiff relies. *See* 81 Fed. Reg. 66138, 66150 (effective Jan. 17, 2017).

The SSA indicated it would use the revised rules on and after their effective date, and that it expected federal courts to review decisions using the regulations in effect at the time of the final administrative decisions. *Id.* at 66138 ("When the final rules become effective, we will apply them to new applications filed on or after the effective date of the rules, *and to claims that are pending on or after the effective date.*") (emphasis added). The ALJ issued her decision on August 29, 2017. AR 32. Because the revised regulations were in effect at that time, the ALJ properly considered the revised regulations. *See Beatty v. Saul*, 2019 WL 4243087, at *5 (E.D. Mo. Sept. 6, 2019) ("Because the

revised regulations were in effect at th[e] time [of the ALJ's decision], the ALJ properly considered the revised regulations.").

As to Plaintiff's argument that application of the new rules violates the Supreme Court's retroactivity jurisprudence, a court must "apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is a statutory direction or legislative history to the contrary." *Bradley v. Sch. Bd. of Richmond*, 416 U.S. 696, 711 (1974). "Retroactivity is not favored in the law . . . and administrative rules will not be construed to have retroactive effect unless their language requires this result." *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988).

This Court is unaware of any case in the Tenth Circuit that has specifically addressed this issue. As it applies to statutes, "the general rule is that courts will not apply [a new] statute in ways that would create new legal consequences for events completed before the statute was enacted." As long as it "do[es] so explicitly," however, Congress "has the power to override this traditional presumption and direct the statute's retroactive application." *Grigsby v. Barnhart*, 294 F.3d 1215, 1219 (10th Cir. 2002) (quoting *Daniels v. United States*, 254 F.3d 1180, 1187 (10th Cir. 2001) (citing *Landgraf v. USI Film Prods.*, 511 U.S. 244, 280 (1994))).

15

The focus squares on the "relevant conduct regulated by the [legislative provision]" in determining impermissibly retroactive provisions. *Republic of Austria v. Altmann,* 541 U.S. 677, 692-700 (2004) (applying *Landgraf*).

> A focus on the "relevant activity" in this case leads inexorably to the conclusion that the change in the regulation was not impermissibly retroactive. The relevant activity is the agency application of the five-step procedure, not the date when claimant asserts that disability started, or the date the claim is filed. This is because it is the application of the five-step process that the regulatory change is directed toward, not the substantive basis for disability eligibility. In other words, the regulatory change had no retroactive effect because the presumption defined by the listing is a rule of adjudication and therefore has its effect on claims at the time of adjudication.

*Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 648-49 (6th Cir. 2006) (en banc) (examining deletion of Listing 9.09, obesity); *but see Cherry v. Barnhart*, 327 F. Supp. 2nd 1347, 1359-60 (N.D. Okla. 2004) ("The Court finds that the deletion of Listing 9.09 resulted in a substantive change in the SSA's determination of disability which attached 'new legal consequences' for individuals with claims pending initial determination or administrative or judicial review prior to October 25, 1999; that is, for individuals who 'acted' by filing their claims prior to the effective date of the final rule.").

Here, the Court finds the former mental impairment listing did not have a retroactive effect on Plaintiff's case, because step three of the sequential evaluation process "regulated only the process of adjudicating social security

16

disability benefits claims—i.e., adjudicatory conduct" —which here took place months after the revised listings went into effect. *See Combs*, 459 F.3d at 648-49. The agency may "freely change rules that purely govern the conduct of adjudication, without fear of retroactive effect, if those changes apply only to pending cases." *Id.* at 649. Accordingly, the Court finds Plaintiff's arguments that "Commissioner engaged in *ultra vires* retroactive rulemaking" and that "[t]he ALJ applied the incorrect legal standard to her evaluation of Plaintiff's mental impairments" to be unpersuasive.[5] Doc. 15, at 25.

---

[5] Plaintiff argues by inference that she might have met the pre-2017 listing. Doc. 15, at 25-27, 30. In so arguing, however, Plaintiff relies on the testing performed by Dr. Danaher. *Id.* at 25, 27, 30. And as discussed above, the ALJ properly discounted Dr. Danaher's report, including his diagnosis of mild intellectual disability. *See* AR 30 (ALJ citing Dr. Danaher's statements "there are a couple of factors which argue against the diagnosis of intellectual disability," including "some indicators suggestive of a level of effort which was potentially suboptimal"). Moreover, the Court notes that the ALJ found that Plaintiff's "treatment records do not show concerns for reduced mental capacity." *Id.* at 29; *see also id.* at 30 (noting that Plaintiff's counselor "does not raise any concern about possible intellectual deficits"). Accordingly, Plaintiff's argument that she might have met the pre-2017 listing is not persuasive. And to the extent Plaintiff attempts to show a manifest injustice, Doc. 15, at 34, that efforts fails.

### III. Conclusion.

Based on the above, the Court affirms the Commissioner's decision.

**ENTERED** this 11th day of March, 2020.

SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE